UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARTECE ARIELLE SADDLER,<br>a/k/a Treshwanda Junius,<br><br>Defendant. | 4:19-CR-40109-01-KES<br><br>ORDER ADOPTING REPORT<br>AND RECOMMENDATION AS<br>MODIFIED AND DENYING MOTION<br>TO SUPPRESS |

Defendant, Martece Arielle Saddler, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5961(d), and 5871. Docket 1. Saddler filed a motion to suppress (1) all physical evidence—the shotgun forming the basis of her charges, ammunition, small amounts of drugs and paraphernalia, photos, and electronic devices—that officers found, took, or seized during a warrant search of her apartment unit on June 8, 2019, and (2) statements made to law enforcement concerning the shotgun on June 20, 2019. Docket 32. Saddler alleges that the evidence was the fruit of an illegal warrant search and seizure. *Id.* The court referred Saddler's motion to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended defendant's motion to suppress be denied. Dockets 45, 50.

Saddler filed objections to the Report and Recommendation. Docket 51. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Saddler's motion.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and Recommendation (Docket 50). The court has conducted a de novo review of the evidence[1] and incorporates herein the facts as set forth in Magistrate Judge Duffy's Report and Recommendation.

_____

[1] An evidentiary hearing was held on August 25, 2020. *See* Dockets 45, 49.

## DISCUSSION

Saddler raises three objections to Magistrate Judge Duffy's Report and Recommendation related to her rights under the Fourth Amendment.[2] Docket 51. First, Saddler objects to Magistrate Judge Duffy's finding that the search warrant was adequately supported by probable cause. *Id.* at 2. Second, Saddler objects to Magistrate Judge Duffy's finding that the good-faith exception to the exclusionary rule applied to the search warrant. *Id.* at 2-8. Third, Saddler objects to Magistrate Judge Duffy's finding that the plain view exception to the warrant requirement justified the shotgun's seizure. *Id.* at 9-13. The court will address each objection in turn.

## I.   The Search Warrant Was Adequately Supported by Probable Cause.

Saddler objects to Magistrate Judge Duffy's finding that the search warrant was adequately supported by probable cause. Docket 51 at 2; Docket 50 at 26-29. Specifically, Saddler argues that the search warrant was "far broader than probable cause merited." Docket 51 at 2. Saddler's arguments focus primarily on the language used in the search warrant itself rather than

---

[2] Saddler asks this court to reach the conclusion that the search warrant was fatally lacking in particularity. Docket 51 at 2. Magistrate Judge Duffy reached that same conclusion in her Report and Recommendation. Docket 50 at 9-26. Saddler lists this under her objections but does not actually object to Magistrate Judge Duffy's conclusion on this point. Docket 51 at 2. This court agrees with Magistrate Judge Duffy's conclusion. Because neither party objects, this court adopts Magistrate Judge Duffy's reasoning and conclusion that the search warrant was fatally lacking in particularity.

the language in Detective Dunn's affidavit in support of the search warrant. *See* Docket 33 at 10-13.

"To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (quoting *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007)). The defendant seeking suppression bears the burden to prove, by a preponderance of the evidence, that the search warrant was not supported by probable cause. *See United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (requiring defendant seeking suppression to prove, by a preponderance of the evidence, that affiant made false statements in the warrant affidavit resulting in the affidavit lacking probable cause without the false statement); *United States v. Beasley*, 688 F.3d 523, 530 n.2 (8th Cir. 2012) (noting the burden of proof is generally on the defendant seeking suppression); *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) (same); *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998) (same).

Probable cause exists when a showing of facts, under the totality of the circumstances, establishes a fair probability that evidence of a crime will be found in the place to be searched. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 699 (8th Cir. 2017). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (quoting *United States v. Grant*,

4

490 F.3d 627, 631 (8th Cir. 2007)) (additional citation omitted). The issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *Grant*, 490 F.3d at 631 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation omitted)).

"When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (alteration in original) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). Here, the record indicates that the state magistrate judge who issued the warrant relied solely on Detective Dunn's affidavit in support of the search warrant. So, the court's probable cause analysis is limited to the information contained in Detective Dunn's affidavit.

Saddler failed to meet her burden of persuasion that the warrant and supporting affidavit lacked probable cause. Detective Dunn's affidavit in support of the search warrant supplied more than sufficient facts from which the issuing state magistrate judge could find probable cause to believe Saddler's apartment contained evidence related to the shooting at 120 N. Cliff Avenue. According to the affidavit, the facts were as follows. Police had reason to believe that both Saddler and Christina Haney lived at 120 N. Cliff Avenue Unit 1. Docket 33-2 ¶ 4. Officers learned during the investigation that Haney and Jasmine Allen were involved in a dispute over social media. *Id.* ¶ 11. Two of Allen's brothers, along with others, went to 120 N. Cliff Avenue to settle this

dispute "with [Haney's] people." *Id.* ¶ 12. Thus, police had reason to believe that Allen's brothers, along with the others, went to 120 N. Cliff Avenue in relation to Haney. Further, video surveillance from a business across the street from the apartment complex captures a group of eight people approaching the complex on foot. *Id.* ¶ 8. That same video shows a person exiting 120 N. Cliff Avenue, firing a handgun into a group of people, and one person falling to the ground. *Id.* As the group of people fled, the shooter continued to fire at the fleeing individuals. *Id.* The affidavit indicates that two of the victims were Allen's brothers and another was Haney's relative. *See id.* ¶¶ 8-11. Both a witness and the surveillance video informed police that the shooter then entered a four-door Buick parked directly in front of 120 N. Cliff Avenue and fled the scene. *Id.* ¶¶ 7, 10. Another witness, Haney's mother, informed officers that Haney is the primary driver of that Buick. *Id.* ¶ 6. Thus, there is a "fair probability" that evidence of the shooting would be found in 120 N. Cliff Avenue Unit 1 because the police had reason to believe the motive for the shooting and the shooter were connected to Unit 1.

Next, police had reason to believe the video camera in Unit 1's window contained evidence of the shooting. Officers were able to see the video camera in Unit 1 from the parking lot where the shooting occurred. *Id.* ¶ 13. Officers also saw the camera pointed at the parking lot during the protective sweep of Unit 1. *Id.* Again, there is a "fair probability" that the video camera in Unit 1 contained evidence of criminal activity, specifically, footage of the shooting.

Detective Dunn's affidavit provided sufficient facts to find that probable cause existed to search for and seize storage devices associated with the camera and items specifically related to the dispute between Haney and Allen. Saddler attacks the broad language used in the search warrant but does not address the language used in Detective Dunn's affidavit. While the search warrant was overly broad, the language in Detective Dunn's affidavit is more precise. Where the warrant broadly authorized seizure of "video cameras, storage devices, any device used for social media and social media storage and any other item related to aggravated assault," Docket 33-1 at 2, Detective Dunn's affidavit specifically sought the video camera that looked over the parking lot at 120 N. Cliff Avenue. Docket 33-2 at 3. Detective Dunn's affidavit sought only storage devices associated with that camera. *Id.* Finally, the affidavit was narrower than the warrant as to social media devices: it noted that law enforcement would only search for items and social media devices related to the dispute between Haney and Allen. *Id.*

Finally, the court is unconvinced with Saddler's argument that police lacked probable cause to search Unit 1 to the exclusion of all other apartments at 120 N. Cliff Avenue. As discussed above, there is ample evidence to connect Unit 1 to the shooting. Haney lived in Unit 1, the victims of the shooting were at 120 N. Cliff Avenue to settle a dispute between Haney and Allen, and Haney was the primary driver of the vehicle the shooter fled in.

7

This court agrees with Magistrate Judge Duffy's conclusion that, based on the totality of the circumstances, the search warrant was supported by adequate probable cause. Saddler's objection is overruled.

## II. The Good-Faith Exception to the Exclusionary Rule Applies to the Search Warrant.

Saddler objects to Magistrate Judge Duffy's conclusion that the good-faith exception to the exclusionary rule applied to the search of Saddler's apartment and seizure of various items therein despite Magistrate Judge Duffy's conclusion that the warrant lacked particularity.[3] Docket 51 at 2.

"The Fourth Amendment commands that no warrants shall issue, but upon probable cause, supported by Oath or affirmation." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)). Ordinarily, the consequence for violation of the Fourth Amendment's limitations is suppression of the evidence and its fruits—a remedy known as the exclusionary rule. *Id.* But the exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984).

"Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid [] will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *Jackson*, 784

---

[3] Because the search warrant was supported by probable cause, this court does not need to reach the issue of whether the good-faith exception would apply to save the warrant's purported lack of probable cause.

U.S. at 1231. (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).

Under this objective analysis, courts must consider "whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Id.* (additional citation omitted). This is a totality of the circumstances inquiry. *See Herring v. United States*, 555 U.S. 135, 145 (2009) (noting the good-faith inquiry is whether a reasonably well-trained officer would know that the search was illegal considering all the attendant circumstances). "These subjective circumstances frequently include a particular officer's knowledge and experience . . . but not [the officer's] subjective intent." *Id.* at 145-46 (citing *Ornelas v. United States*, 517 U.S. 690, 699-700 (1996); *Whren v. United States*, 517 U.S. 806, 812-13 (1996)).

> The good-faith exception does not apply in four instances:
>
> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
>
> (2) when the issuing judge 'wholly abandoned his judicial role' in issuing the warrant;
>
> (3) when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' and
>
> (4) when the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid.

*Jackson*, 784 F.3d at 1231 (quoting *Proell*, 485 F.3d at 431).

Saddler does not allege any of the first three instances. Instead, Saddler argues, under the fourth scenario, that the shotgun should be suppressed because the warrant "was so facially deficient in detail . . . that the officers

could not have reasonably presumed the warrant valid." *See* Docket 33 at 9 (alteration in the original) (quoting *United States v. Barnes*, 749 F. Supp. 2d 1124, 1136 (D. Idaho 2010)). Saddler offers three arguments in support of her claim that the good-faith exception does not apply: (1) the government failed to prove the affidavit accompanied the search warrant to the scene of the search; (2) this case involved more than mere negligence on the part of law enforcement; and (3) Magistrate Judge Duffy failed to apply the objective officer standard, instead focusing too much on the executing officers' subjective states of mind. Docket 51 at 3-8.

### A. Failure to Prove the Affidavit Accompanied the Search Warrant to the Scene

Law enforcement's failure to bring the affidavit in support of the search warrant to the scene of the search is not fatal to the good-faith exception's application. Saddler relies on two cases, *United States v. Decker*, 956 F.2d 773 (8th Cir. 1992) and *Groh v. Ramirez*, 540 U.S. 551 (2004), for the proposition that the affidavit describing the places to be searched and the items to be seized must accompany a facially unparticular search warrant in order for the good-faith exception to apply. Docket 51 at 3-4. Saddler's reliance on *Decker* and *Groh* is misplaced.

Saddler's case is distinguishable from *Decker*. There, a DEA agent's affidavit specifically listed various drug items to be seized. *Decker*, 956 F.2d at 775. But the search warrant issued by the judge did not list *any* of the items described in the affidavit except a package that was already in police custody.

10

*Id.* Further, the search warrant was a standard form warrant for stolen property instead of drugs, and the prosecutor did not sign the warrant as required by state law. *Id.* The issuing judge admitted that the warrant's flaws were his own fault. *Id.* The DEA agent executed the warrant at the residence, but the affidavit did not accompany the warrant to the search site. *Id.* The executing officers seized more than 300 items at the defendants' residence. *Id.* The Eighth Circuit affirmed the district court's suppression of the evidence seized from the defendants' residence. *Id.* at 780. First, the court held that the issuing judge acted as a rubber stamp for the government, thereby abandoning his judicial role. *Id.* at 777. Second, the court held that the good-faith exception did not apply to this case because the exception cannot apply "where the issuing magistrate wholly abandoned his judicial role[.]" *Id.* at 778 (quoting *Leon*, 468 U.S. at 923). Third, the court held the evidence was properly suppressed by the district court because the search warrant did not satisfy the Fourth Amendment's particularity requirement. *Id.* at 779.

Saddler misapprehends *Decker's* central holding. Saddler argues that the court held the good-faith exception did not apply to the facially unparticular search warrant because the affidavit was not incorporated physically or by reference and was not physically present at the time the search was executed. Docket 51 at 3-4. But that is not what the court held. Rather, the Eighth Circuit held that the affidavit could have *cured* the search warrant had it been specifically incorporated by reference in and physically attached to the warrant, or referenced in the warrant and physically present at the search. *Decker*, 956

F.2d at 778 (emphasis added). The affidavit's curative effect is not the same as application of the good-faith exception. Indeed, the court noted that the good-faith exception was inapplicable because the issuing judge wholly abandoned his judicial role, not because the affidavit was not physically present at the search site. *Id.* Saddler does not argue that the state magistrate judge wholly abandoned his judicial role, nor does the government argue that the affidavit cured the search warrant. Thus, the court is not persuaded by Saddler's reliance on *Decker*.

Saddler's case is also distinguishable from *Groh*. There, an ATF agent prepared and signed a detailed application for a search warrant, supported by a detailed affidavit. *Groh*, 540 U.S. at 554. Both described with particularity various types of firearms the agent believed were located at defendants' ranch. *Id.* A magistrate issued a warrant, but the warrant merely stated a description of the defendants' property where the warrant called for a description of "person or property" to be seized. *Id.* The warrant did not mention firearms, nor did it incorporate by reference the application or affidavit. *Id.* at 554-55. The agent led a team of law enforcement officers to defendants' residence to execute the warrant. *Id.* at 555. The agent did not bring a copy of the application or the affidavit to the search site because both were under seal. *Id.* The Supreme Court held the warrant was invalid because it failed to particularly describe the persons or things to be seized. *Id.* at 557. The Court further held that the good-faith exception did not apply to save the search warrant because "no reasonable officer could believe that a warrant that plainly did not comply with

12

[the particularity requirement] was valid." *Id.* at 563. The Court stressed that the warrant's failure to describe *anything* under the items to be seized section was fatal to the warrant. *Id.* at 558.

The fact that the affidavit and application did not accompany the warrant did not factor into the *Groh* Court's good-faith exception analysis. Rather, it played into the particularity analysis. The Court did not have to reach a good-faith analysis because the warrant was "so facially deficient" that no reasonable officer could presume the warrant to be valid. *Proell*, 485 F.3d at 431. That is not the case here. While Detective Dunn's warrant lacked particularity, a reasonable officer could presume the warrant valid. Unlike the warrant in *Groh*, Detective Dunn's warrant listed various items to be seized—video cameras, storage devices, any device used for social media and social media storage and any other item related to aggravated assault—along with the place to be searched—120 N. Cliff Avenue Unit 1. Docket 33-1 at 1. The court is unconvinced by Saddler's reliance on *Groh*.

Saddler's case is analogous to *United States v. Szczerba*, 897 F.3d 929 (8th Cir. 2018). In *Szczerba*, the Eighth Circuit found that the good-faith exception may still apply even when the search warrant did not particularly describe the items to be seized. *Id.* at 936. There, the search warrant authorized by the magistrate failed to identify the items to be seized during the search. *Id.* The affidavit in support of the warrant listed various items to be seized, but the warrant did not incorporate the affidavit by reference. *Id.* But the court held that the warrant was not so obviously deficient that no

13

reasonable officer could presume the warrant valid. *Id.* at 938. The court reasoned that the warrant clearly identified the places to be searched, the warrant referred to the affidavit in its averment of probable cause, the issuing judge signed the affidavit, and the affidavit accompanied the warrant to the search site. *Id.* at 938-39. The officers in *Szczerba* reasonably relied on the warrant and the good-faith exception applied. *See id.* at 939.

Likewise, the officers here reasonably relied on the search warrant and the good-faith exception applies. Most of the factors present in *Szczerba* are present here: the affidavit specifically identified Saddler's apartment as the place to be searched, the warrant specifically referred to the affidavit in its averment of probable cause, and the state magistrate judge reviewed and signed the affidavit. *See* Docket 33-1 at 1-2. The final factor under *Szczerba* was the warrant was present at the scene of the search. Docket 50 at 34. While there is no evidence that the affidavit was present here at the search, the officers were briefed on what items they were to seize in accordance with the affidavit. *Id.* The court finds that the good-faith exception applies because the police acted in objective good faith in obtaining the search warrant and acted within its scope.

### B. Degree of Culpability

"Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." *United States v. Hamilton*, 591 F.3d 1017, 1027 (8th Cir. 2010). The exclusionary rule "applies only where it 'results in appreciable deterrence.' " *Herring*, 555 U.S. at 141

(quoting *Leon*, 468 U.S. at 909) (additional citation omitted). The benefits of deterrence must outweigh the costs. *Id.* "The principal cost of applying the rule is . . . letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.' " *Id.* (quoting *Leon*, 468 U.S. at 908). Courts must assess the degree of culpability of police misconduct in analyzing whether to apply the exclusionary rule. *Id.* at 143. Thus, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144.

Here, Saddler argues that Detective Dunn's warrant was the result of gross negligence. Docket 51 at 6. Saddler points to the fact that Detective Dunn attempted to describe the items to be seized in the warrant as the basis for his gross negligence. *Id.* at 5. The court is unpersuaded by this argument. Detective Dunn's mistake in drafting the facially deficient warrant was the result of negligence and inexperience rather than gross negligence. Nothing in the record indicates that Detective Dunn acted in bad faith.

Likewise, the court is unconvinced by Saddler's contention that, because the search was "gratuitous," Detective Dunn was grossly negligent. Docket 51 at 7. While officers could have seized the camera in plain view during the protective sweep of Unit 1, Detective Dunn instead attempted to comply with the Fourth Amendment by securing a search warrant. If anything, Detective Dunn's attempted compliance with the Fourth Amendment shows that he and other officers acted in good faith. Thus, the court rejects Saddler's argument

15

that law enforcement was grossly negligent, and any deterrent effect of suppression would be marginal at best.

### C. Objective Reasonableness

Next, Saddler contends that Magistrate Judge Duffy focused too much on the executing officers' subjective states of mind rather than an objective standard. *Id.* Saddler faults Magistrate Judge Duffy for considering Detective Dunn's inexperience, the significance of the crime being investigated, the "rapidly-developing situation," and the officers' personal beliefs as to the warrant. *Id*; *see also* Docket 50 at 33-35.

As previously discussed, under a good-faith exception analysis, the totality of the circumstances must be considered. *See* discussion *supra* Section III at 9. Subjective considerations like an officer's experience and knowledge play into that analysis. *Herring*, 555 U.S. at 145-46. The nature of the crime and the development of the situation are also among the totality of the circumstances to be considered. Objectively, the search warrant was not so facially deficient that no reasonable officer could presume it to be valid. *See* discussion *supra* Section III.A. Thus, Saddler's objection is overruled.

### III. Officer Jorgensen's Seizure of the Shotgun Was Justified Under the Plain View Exception to the Warrant Requirement.

Saddler objects to Magistrate Judge Duffy's conclusion that Officer Jorgensen's seizure of the shotgun during the search of Unit 1 was justified under the plain view exception to the warrant requirement. Docket 51 at 9. Specifically, Saddler argues that Officer Jorgensen's presence in the apartment

16

was unlawful, the incriminating nature of the shotgun was not immediately apparent to Officer Jorgensen, and Officer Jorgensen did not lawfully access the shotgun. *Id.* at 9-13.

"A warrantless seizure 'is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions.' " *United States v. Lewis*, 864 F.3d 937, 943 (8th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)). One such exception is the plain view exception. *See generally Horton v. California*, 496 U.S. 128, 133 (1990). Under the plain view exception, the government is required to prove (1) the officer is lawfully present in the place where the evidence could be plainly viewed; (2) the incriminating nature of the object is immediately apparent to the officer; and (3) the officer has lawful access to the object. *Lewis*, 864 F.3d at 943. The government's burden is proof by a preponderance of the evidence. *Coolidge*, 403 U.S. at 455.

This court agrees with Magistrate Judge Duffy's determination that officers relied in good faith on an unconstitutionally broad search warrant. Thus, the first question to address is whether officers relying on an invalid search warrant in good faith satisfies the lawful presence prong in *Lewis*.

### A. Lawful Presence

Magistrate Judge Duffy correctly noted that the Eighth Circuit has not ruled on this issue. Docket 50 at 37. Like Magistrate Judge Duffy, this court is persuaded by those cases specifically addressing the plain view exception in the context of the good-faith exception. *See United States v. Legg*, 18 F.3d 240,

17

244 (4th Cir. 1994) (holding, under the plain view exception, officers were lawfully present in defendant's apartment during the execution of a search warrant because they relied on an invalid warrant in good faith); *United States v. Morris*, 904 F.2d 518, 519 (9th Cir. 1990) (same); *United States v. Thomas*, No. 5:16-cr-001, 2016 WL 7324095, at *11 (W.D. Va. Dec. 15, 2016) (denying motion to suppress evidence of child pornography discovered during the warrant search of a cell phone SIM card where *Leon* good faith authorized the search and the plain view doctrine justified the seizure); *United States v. Wolfe*, 22 F. Supp. 2d 627, 641 n.3 (E.D. Mich. 1998) ("Assuming *arguendo* that the warrant was invalid to the search of the residence, but that the *Leon* decision's good faith exception is applicable, this [c]ourt would still find that the officers were lawfully searching the defendant's residence for purposes of the plain view doctrine.").

The cases Saddler relies on are unconvincing. First, Saddler cites to the dissenting opinion in *United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) for the proposition that relying on good faith and plain view eviscerates any protection against general warrants. Docket 51 at 10. But the warrant here was far from a general warrant. True, the warrant was insufficiently particular, however, there were parameters guiding the officers executing the warrant. *See* Docket 33-1. Next, Saddler relies on *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) for the idea that plain view does not apply when officers are present due to an invalid warrant. Docket 51 at 10. *Lo-Ji Sales* is a pre-*Leon* case and did not analyze whether plain view would apply in the context of a good-faith application. Thus,

the court rejects Saddler's arguments on this point and finds that the government carried its burden to show that Officer Jorgensen was lawfully present when he viewed the firearm in plain view.

### B. Incriminating Nature

Next, Saddler argues that Magistrate Judge Duffy incorrectly concluded that the incriminating nature of the shotgun was immediately apparent to Officer Jorgensen.

Under the second prong of the plain view analysis, "officers must have 'probable cause to associate the property with criminal activity.' " *United States v. Brooks*, 645 F.3d 971, 976 (8th Cir. 2011) (quoting *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995)). Probable cause does not require hard certainties, but only that the facts would warrant a reasonable person to believe that the item *may* be contraband or evidence of a crime. *Hatten*, 68 F.3d at 261.

Saddler argues that Officer Jorgensen could not appreciate the incriminating nature of the shotgun until after it was measured and that the measurement constituted manipulation in violation of *Arizona v. Hicks*, 480 U.S. 321 (1987). Docket 33 at 14. Officer Jorgensen testified at the suppression hearing that he immediately noticed the shotgun's barrel was "extremely short" after he removed it from the shelf. Docket 49 at 50. He also testified that it appeared to him that the barrel of the shotgun had been cut off. *Id.* According to Officer Jorgensen, the barrel looked shorter than the legal minimum length, which he knew to be 18 inches. *Id.* at 61. Seizing an item in plain view does not

19

require that the officer be certain of its incriminating nature; instead, the officer need only have probable cause to believe the item was incriminating in nature. *Hatten*, 68 F.3d at 261. Here, the later measurement of the shotgun merely confirmed Officer Jorgensen's reasonable belief that the barrel was too short. Officer Jorgensen's testimony persuades this court that the incriminating nature of the shotgun was immediately apparent to him because he reasonably believed the barrel to be under the legal minimum length. Thus, Officer Jorgensen had probable cause to seize the shotgun, and the government has met its burden on this point.

### C. Lawful Access

Finally, Saddler contends that Magistrate Judge Duffy erroneously concluded that Officer Jorgensen had a lawful right of access to the shotgun. Docket 51 at 11. Both Magistrate Judge Duffy and Saddler correctly frame the issue as whether Officer Jorgensen's handling of the shotgun prior to suspecting its incriminating nature was permissible.

The court must determine whether it was reasonable for Officer Jorgensen to pick up the firearm to determine its incriminating nature. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal citation omitted) ("[T]he Fourth Amendment's ultimate touchstone is 'reasonableness'[.]") For the seizure of the shotgun to be reasonable, Officer Jorgensen must have had some lawful justification for removing that shotgun to meet the plain view exception. Officer Jorgensen had lawful access to the firearm when he first observed it because, as previously discussed, he relied on an invalid search warrant in

20

good faith. Had he immediately recognized the incriminating nature of the shotgun, his seizure of the firearm would undoubtedly fall under the plain view exception. But this case is more nuanced because Officer Jorgensen only noticed the incriminating nature of the shotgun *after* picking it up. *See Minnesota v. Dickerson*, 508 U.S. 336, 375 (1993) (holding that plain view cannot justify the seizure of an item if its incriminating nature is not immediately apparent without some further search of the item). Thus, whether Officer Jorgensen had lawful access to pick up the shotgun depends on whether: (1) Officer Jorgensen lawfully picked up the shotgun to secure it, placing him in a lawful position to view the barrel, *see United States v. Arcobasso*, 882 F.2d 1304, 1307 (8th Cir. 1989) (holding that seizure of unloaded weapons in plain view was reasonable as a precaution to assure officer safety due to the presence of persons in the home during he search); or (2) Officer Jorgensen picked up the shotgun under the reasonable belief that the storage devices he believed the warrant authorized him to search for could have been under or behind it. *See Hicks*, 480 U.S. at 325 (noting that taking action *related to the objectives of the authorized intrusion* would have justified the government's manipulation and search of defendant's stolen property).

This court agrees with Magistrate Judge Duffy's determination that officer safety cannot justify Officer Jorgensen's temporary seizure of the shotgun. Docket 50 at 44-45. Officer Jorgensen did not provide any testimony to support a belief "that his temporary seizure of the firearm [from the shelf] was necessary to avoid a specific, actual, imminent, or even possible risk to

21

other officers" or himself. *United States v. Prather*, 138 F. Supp. 2d 1059, 1067 (D. Iowa 2015). There is no evidence in the record that anyone other than law enforcement was present in the apartment during the search. *See id.* at 1066-67 (suppressing the warrantless seizure of a firearm during an unrelated search because officer safety was not a legitimate justification as no civilians were present during law enforcement's search of defendant's residence).

But Officer Jorgensen's temporary seizure of the shotgun is justified by virtue of his ongoing search of Saddler's closet for storage devices the size of a SIM card. *See Hicks*, 480 U.S. at 325 (noting that action related to the objectives of the authorized intrusion is justified); *Prather*, 138 F. Supp. 2d at 1064 (distinguishing picking up a firearm in plain view for the sole purpose of securing it from picking it up in furtherance of the search warrant). Here, Officer Jorgensen's testimony reveals that he picked up the shotgun in furtherance of the search warrant. Officer Jorgensen testified that he was searching for cameras, cell phones, and SIM cards. Docket 49 at 46. He testified that a SIM card was the smallest item he searched for, measuring about 1 inch. *Id.* As he searched Saddler's bedroom, he noticed the shotgun on a closet shelf between clothing items. *Id.* at 49. While Officer Jorgensen stated he picked up the shotgun for his safety, he also noted that he moved the shotgun in order to continue his search of the closet for SIM cards. *Id.* at 56. He noted that upon removing the shotgun, there was still more to be searched in the closet. *Id.* at 57. He testified that, after removing the shotgun, he

22

proceeded to look through the entire closet in search of evidence authorized by the warrant. *Id.* at 60.

Saddler contends that Officer Jorgensen's claims that he moved the shotgun in furtherance of the search for evidence authorized by the warrant are "inherently incredible and should not [be] believed." Docket 51 at 12. Saddler argues that Officer Jorgensen could plainly see that there was no evidence under the shotgun and that he could easily have searched around it by moving the clothing items. *Id.* The court is unpersuaded by Saddler's argument. As Officer Jorgensen testified, a SIM card is a small item. It is entirely conceivable that a SIM card, which is about an inch large, could be under the shotgun. So, it would be necessary for Officer Jorgensen to pick up the shotgun to see if there were SIM cards hidden underneath it, something that would not be possible merely by moving the clothing items around the firearm. And even if he had merely moved the clothing items looking for a SIM card, the size of the firearm would have been readily apparent to Officer Jorgensen after the clothing was removed. This court finds that the government has met its burden to prove that Officer Jorgensen had a lawful right of access to the shotgun.

For these reasons, the government has met its burden to show by a preponderance of the evidence that the plain view exception to the warrant requirement applies. Saddler's objection is overruled.

## CONCLUSION

Detective Dunn's affidavit provided enough facts to support the state magistrate's finding of probable cause to issue the search warrant for 120 N. Cliff Avenue Unit 1. The shooter, the motive, and the victims all had ties to the apartment. While the search warrant itself was not sufficiently particular, law enforcement's reliance on it was in good faith and reasonable. Finally, Officer Jorgensen's temporary seizure of the shotgun was justified under the plain view exception to the warrant requirement because he was lawfully present in the apartment, the shotgun's incriminating nature was immediately apparent to him, and he had a lawful right of access to the shotgun. The court adopts Magistrate Judge Duffy's recommendation as modified and denies Saddler's motion to suppress. Thus, it is

ORDERED that the report and recommendation (Docket 50) denying Saddler's motion to suppress is adopted as modified by this opinion.

Dated October 23, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE